**Wolters Kluwer**

## Service of Process Transmittal Summary

**TO:**        Connie Dyer, Regional Sales Director
Textron Aviation Inc.
1 CESSNA BLVD, BUILDING 1
WICHITA, KS 67215-1400

**RE:**        **Process Served in Kansas**

**FOR:**      Textron Aviation Inc.  (Domestic State: KS)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: WARREN DENNING and DOMINIC and KIMBERLY VALLE individually and on behalf of all others similarly situated // To: Textron Aviation Inc.<br>Name discrepancy noted. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Complaint, First Set of Requests, First Set of Interrogatories |
| **COURT/AGENCY:** | Sedgwick County Eighteenth Judicial District Court, KS<br>Case # SG2025CV000917 |
| **NATURE OF ACTION:** | Personal Injury - Exposure to Benzene |
| **PROCESS SERVED ON:** | The Corporation Company, Inc., Topeka, KS |
| **DATE/METHOD OF SERVICE:** | By Traceable Mail on 05/08/2025 postmarked: "Not Post Marked" |
| **JURISDICTION SERVED:** | Kansas |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after service (not counting the day of receipt) |
| **ATTORNEY(S)/SENDER(S):** | Jerry D Bogle<br>Young, Bogle, Wells & Blanchard, P.A.<br>100 N. Main, Suite 1001<br>Wichita, KS 67202-1322<br>316-265-7841 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/09/2025, Expected Purge Date: 05/14/2025<br><br>Image SOP<br><br>Email Notification,  Melissa Atterberry  mjatterberry@txtav.com<br><br>Email Notification,  Connie Dyer  cdyer@txtav.com<br><br>Email Notification,  Linda Remillard  lremillard@txtav.com<br><br>Email Notification,  David Chant  dchant@txtav.com<br><br>Email Notification,  Matthew Flesher  mdflesher@txtav.com |
| **REGISTERED AGENT CONTACT:** | The Corporation Company, Inc.<br>112 S.W. 7th Street<br>Suite 3C<br>Topeka, KS 66603<br>877-564-7529 |

**EXHIBIT**
**1**



**CT Corporation**
**Service of Process Notification**
05/08/2025
CT Log Number 549088264

MajorAccountTeam1@wolterskluwer.com

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

**CERTIFIED MAIL**

YOUNG, BOGLE, WELLS,
& BLANCHARD, P.A.
100 N. MAIN, SUITE 1001
WICHITA, KS 67202-1322

9589 0710 5270 1728 7428 73

C T Corporation System
112 SW 7th Street, Suite 3C
Topeka, KS 66603

Law Offices
**Young, Bogle, Wells & Blanchard, P.A.**

Jerry D. Bogle
William A. Wells
Patrick C Blanchard

OF COUNSEL:
Glenn D. Young, Jr.
Vernon D. Just

100 N. Main, Suite 1001
Wichita, Kansas 67202-1322
Telephone: (316) 265-7841
Facsimile: (316) 265-3956

E-Mail:jerry.bogle@youngboglelaw.com
Website: www.youngbogle.com

| | |
|---|---|
| Stanley & Vermilion | 1886-1897 |
| Stanley, Vermilion & Evans | 1897-1909 |
| Stanley, Vermilion, Evans | |
| & Carey | 1909-1913 |
| Vermilion, Evans, Carey | |
| & Lilleston | 1913-1946 |
| Carey, Lilleston, | |
| Spradling & Gott | 1946-1950 |
| Lilleston, Spradling, Gott, | |
| Stallwitz & Hope | 1950-1974 |
| Gott, Hope, Gott, | |
| Young & Saffels | 1975-1979 |
| Gott, Young & Bogle | 1979-1989 |

May 2, 2025

C T Corporation System
112 SW 7th Street, Suite 3C
Topeka, KS 66603

     Re:      Warren Denning et al v. Textron Aviation, Inc.
     Case No:   SG-2025-CV-000917

Ladies and Gentlemen:

     The following pleadings are enclosed:

1. Summons
2. Plaintiffs' Class Action Petition and Jury Demand
3. Plaintiffs' First Set of Request for Production of Documents to Defendant Textron Aviation, Inc.
4. Plaintiffs' First Set of Interrogatories to Defendant Textron Aviation, Inc.

     Please do not hesitate to contact our office if you have any questions or concerns.

          Very Truly Yours,

          Lisa R. Heiserman, Legal Assistant to
          Jerry D. Bogle of
          YOUNG, BOGLE, WELLS
          & BLANCHARD, P.A.

Enclosures (4)

ELECTRONICALLY FILED
2025 Apr 23 PM 2:34
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: SG-2025-CV-000917
PII COMPLIANT

IN THE <u>18th</u> JUDICIAL DISTRICT
DISTRICT COURT OF <u>SEDGWICK</u> COUNTY, KANSAS

Warren Denning et. al.,    )
          Plaintiff,    )
V                   )          Case No. <u>SG-2025-CV-000917</u>
Textron Aviation Inc et. al.,  )
          Defendant.    )

Defendant's Name and Address:
<u>C T Corporation System</u>
<u>112 SW 7th Street</u>
<u>Suite 3C</u>
<u>Topeka, KS 66603</u>

Proceeding Pursuant to K.S.A. Chapter 60

## SUMMONS

To: <u>C T Corporation System</u>
    (Defendant's name)

A civil lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached petition or a motion under K.S.A. 60-212. Under Kansas Supreme Court Rule 113, you may seek from the clerk of the court an extension of up to 14 additional days to serve and to file an answer or a K.S.A. 60-212 motion.

If you fail within 21 days to serve and to file an answer or a K.S.A. 60-212 motion or obtain a Rule 113 extension, the court may enter default judgment against you for the relief

demanded in the petition. If you were served outside of Kansas, however, the court may not enter default judgment against you until at least 30 days after service of this summons.

The answer or K.S.A. 60-212 motion must be served on the plaintiff's attorney, or the plaintiff if plaintiff has no attorney, at the following address:

Jerry D Bogle
(Attorney's name or Plaintiff's name)

100 N Main

Suite 1001

Wichita, KS  67202

(Attorney's address or Plaintiff's address)

You also must file your answer or K.S.A. 60-212 motion with the court.

When you file an answer, you must state as a counterclaim(s) any related claim(s) that you may have against the plaintiff. If you fail to do so, you will thereafter be barred from making such claim(s) in any other action.



Clerk of the District Court.

By Maurita Gatewood
Clerk or Deputy

**Documents to be served with the Summons**
PLE: Petition Plaintiffs Class Action Petition and Jury Demand

ELECTRONICALLY FILED
2025 Apr 14 PM 7:14
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: SG-2025-CV-000917
PII COMPLIANT

YOUNG, BOGLE, WELLS
& BLANCHARD, P.A.
100 North Main, Suite 1001
Wichita, Kansas 67202-1322
Telephone: 316-265-7841
Facsimile: 316-265-3956
Email: jerry.bogle@youngboglelaw.com

## IN THE DISTRICT COURT OF SEDGWICK COUNTY, KANSAS

| | |
|---|---|
| WARREN DENNING and DOMINIC and KIMBERLY VALLE individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. |
| v. | COMPLAINT |
| TEXTRON AVIATION, INC. | CLASS ACTION |
| Defendant. | JURY TRIAL DEMANDED |

### PLAINTIFFS' CLASS ACTION PETITION AND JURY DEMAND

Plaintiffs, by and through their undersigned attorneys, bring this civil action under K.S.A. 60-223(b)(3) on their own behalf and on behalf of the Class they represent to obtain damages, both compensatory and punitive, and costs of suit from the Defendant. Plaintiffs allege and state as follows:

### INTRODUCTION

1. This is a civil action to redress circumstances created by Defendant Textron Aviation Inc. ("Textron") and for damages suffered by members of the putative class defined below (the "Class Members"). The Defendant's actions have resulted in the contamination of the Class Members' properties and Class Members' exposure to toxic chemicals by ongoing releases and leachate from the Textron Aviation facility, primarily an aircraft manufacturing site, directly

east of the Forest Hills neighborhood in Wichita, Kansas (the "Site"). Textron Aviation's Main

facility consists of a total area of approximately 650 acres and is primarily used for aircraft

manufacturing and airport purposes.

2.     The Site has been owned and operated by the Defendant, and during the ownership

and operation of the Site, the Defendant: (1) mishandled and thereby released hazardous and toxic

substances at the Site, (2) disposed of hazardous wastes at the Site, and (3) mishandled the

management and the cleanup of the wastes and substances released from the Site.

3.     In combination, the contamination and its attendant risks migrated off-site in,

under, on, around and through Plaintiffs' and Class Members' properties in the Central Ave area

Forest Hills, and Corporate Hills (the "Plume" or "Class Area"). The Site has experienced

continuing releases of toxic, hazardous, substances, and hazardous wastes for decades. Defendant

is aware that the contamination and the source of the contamination has been occurring for decades

and possibly longer. Although these facts were known to the Defendant for years, this information

has been withheld and concealed from Plaintiffs and the Class Members.

4.     Because of the Defendant's ownership and operations at the Site, Plaintiffs and

Class Members have been exposed to toxic and hazardous substances and wastes from chemical

degreasing agents that Defendant used, transported, carried, or otherwise handled. These on-Site

operations resulted in contaminants being released onto and into the soil, the ground water, and

the air at the Site. These releases have migrated, and continue to migrate, to Plaintiffs' and Class

Members' properties. The contaminants released at the Site were associated with the storage,

transfer and use of solvents, acids, and metals including, but not limited to:

Acetone, Benzene, Carbon tetrachloride, Chloroform, 1,1-Dichloroethane, 1,2-
Dichloroethane, 1,1-DCE, cis-1,2-DCE, trans-1,2-Dichloroethene, 1,2-Dichloropropane,
Ethylbenzene, Tetrachloroethene (PCE), Toluene, 1,1,2-Trichloroethane, TCE, and Vinyl

2

chloride, and other related compounds as well as other contaminants (herein referred to as "contaminants", or "Contamination".)

5.      Despite its knowledge of: (a) the releasing, leaking, leaching, and migrating contaminants at the Site; (b) the off-Site nuisance and trespass caused by the contaminants; (c) the fate and transport characteristics of the contaminants; and (d) the associated health risks with these toxic, hazardous, and carcinogenic contaminants, Defendant remained silent and concealed the presence of these contaminants and their releasing, leaching and migrating from the Site. Defendant also remained silent and concealed the fact that the contaminants were migrating onto, into, and around the Plaintiffs' and the Class Members' properties.

6.      The presence of these toxic and hazardous contaminants on, at, and in Plaintiffs' and Class Members' properties presents a significant health risk and harm to those living at these contaminated properties as well as a significant environmental liability and damage to those owning these contaminated properties.

## PARTIES

### Plaintiffs

7.      Plaintiffs are residents living in and around the Forest Hills neighborhood in Wichita, Kansas and own properties that are located within the Class Area. Plaintiffs are putative class representatives for the Class which is defined below.

8.      Warren Denning owns and resides at 27 Laurel Drive, Wichita, KS 67206.

9.      Dominic and Kimi Valle own and reside at 14 E. Sequoia Drive, Wichita, KS 67206.

10.      As a result of Defendant's actions, specifically the inadequate containment, handling, and remedial activities, the toxic and hazardous contaminants have entered and contaminated Plaintiffs' and Class Members' properties - their air, land, groundwater, dwelling

3

place (homes) and their surrounding environment - thereby causing Plaintiffs and Class Members to suffer endangerment to their health, damage to their property and personal finances, and destruction of their community.

11. As a result of the Defendant's actions, toxic and carcinogenic contaminants have entered onto Plaintiffs' and Class Members' properties, creating a blight on their community, and causing diminution in their property values.

### Defendant

12. Textron, a subsidiary of Textron Inc., is incorporated in the State of Kansas with headquarters located at 1 Cessna Blvd, Wichita, KS 67215.

### JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this class action pursuant to Kan. Stat. § 20-301. The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and the action is between multiple members of the class, who are residents and/or citizens of the State of Kansas, and the Defendant, who is a citizen of the State of Kansas. The number of members of all proposed plaintiffs in the class in the aggregate is more than one hundred (100).

14. This Court has personal jurisdiction over Defendant because Plaintiffs' claims arise out of Defendant's contacts, acts, and omissions within the State of Kansas such that the exercise of such jurisdiction is consistent with due process under the United States Constitution. The Court has general personal jurisdiction with Defendant because it is a citizen of the State of Kansas.

15. Venue is proper in this judicial district because a substantial part of the events, acts, and omissions that give rise to the claims at issue in this case occurred in this District, in Sedgwick

County Kansas, Defendant is headquartered in this District, and Defendant has caused harm to Plaintiffs and Class Members in this District.

## FACTUAL ALLEGATIONS

I.     **Defendants Have Contaminated and Continue to Contaminate Plaintiffs' Properties**

16.     Defendant has released, leaked, and leached and continue to release, leak, and leach contaminants that have migrated and continue to migrate into, under, onto and around the Plaintiffs' and the Class Members' properties and residences. Defendant has contaminated and continue to contaminate these properties with harmful chemicals—including toxic and carcinogenic chlorinated solvents such as TCE and 1,4-dioxane.

17.     The contamination at the Site is believed to date back to spills that took place in 1993 or earlier at which time Raytheon Aircraft Company (RAC) owned the facility. In 2007 RAC was sold to Hawker Beechcraft Corporation. Hawker Beechcraft declared Chapter 11 Bankruptcy in May 2012 and emerged from bankruptcy in February 2013 as Beechcraft Corp. In 2014, Textron, Inc. acquired Beechcraft, purchased the facility, and formed Textron Aviation.

18.     During the period of Defendant's use of the property, spills and leaks of toxic chemicals, including but not limited to the Contaminants, occurred at the Site, contaminating the soil and groundwater.

19.     These spills and leaks have resulted in contamination throughout the neighborhood that extends roughly over a half mile to the west and south from Defendant's source of contamination. Defendant's release and disposal of contaminants created an imminent and substantial threat to public health and to the Plaintiffs' and the Class Members' health and wellbeing and have devalued their residences and properties. Furthermore, recent air monitoring

results show TCE contamination occurring in homes outside of the original plume boundary indicating the plume is larger than originally estimated.

20.    Defendant continues to release contaminants from the Site into the groundwater that migrates to Plaintiffs' properties because Defendant failed to implement effective remediation measures at the Site or mitigation measures in the Class Area.

21.    Groundwater extraction and soil vapor extraction procedures were implemented in 1997 at Plant 1 and Plant 3. These procedures were shown to be ineffective as they extracted relatively low levels of VOCs at both locations.

22.    The Contaminants continue to migrate from the Site into, onto, and under the properties of the residents in the Class Area.

23.    Defendant has known, or should have known, that its remediation measures have been ineffective and the operations at the Site have been releasing, leaking, leaching, and discharging these hazardous and carcinogenic contaminants into, under, and onto Plaintiffs' properties and into the groundwater and air into the Class Area as identified below and that contaminants continue to migrate from the Site to the Class Area.

24.    Furthermore, Defendant remained silent and did nothing to notify the general public in the Class Area, including those living or purchasing homes in the Class Area, that their properties and residences were contaminated or were threatened by contamination.

25.    For ten years Defendant owned and/or operated the Site all the while failing to properly control the contaminants, properly remediate the contamination, and to appropriately notify the public about the presence, hazards and threats of the contamination.

6

26.     Had Defendant properly contained, mitigated, or remediated the contaminants, Plaintiffs' and the Class Members' properties would not have their health put at risk and continue to be threatened and damaged.

27.     Had Defendant adequately notified the public, the Plaintiffs and the Class Members would not have purchased property and/or resided at property within and around the Class Area and would not have suffered damages as a result.

28.     The Contaminants are known human carcinogens and/or cause other health effects.

29.     Contaminants leaching into and migrating with the groundwater expose the Plaintiffs and the Class Members to dangerous carcinogens and to the Contaminants through the well-known, well-understood and generally accepted process of "vapor intrusion."

30.     Vapor intrusion occurs when chemical vapors from VOCs migrate upward from contaminated soil and/or groundwater through the soil and through building foundations and floors and into the indoor air.

31.     Unknown to them, for years Plaintiffs' and the Class Members' properties have been contaminated, and this contamination poses an ongoing and continuing threat to the property as well as to those residing in and on the property.

32.     As a result of the contamination at their properties and the continuing threat of exposure, Plaintiffs and Class Members have suffered damages, including exposure to harmful contaminants and diminution in their property values.

II.     **Plaintiffs and Class Members Were Left Completely in the Dark**

33.     No one, neither the Defendant nor the Defendant's employees and agents, adequately notified Plaintiffs or the Class Members of the presence of their contaminants at, in, under, and around Plaintiffs' and the Class Members' properties.

7

34.     No one, neither the Defendant, nor its employees or agents, adequately notified Plaintiffs or the Class Members of the threat of exposure or the potential carcinogenic risks and risks of other diseases posed by the presence of these contaminants at, in, under, and around their properties and residences.

35.     Rather than provide such notice and information, for decades Defendant remained silent and concealed from the public, the Plaintiffs, and the Class Members, the presence of its contaminants migrating throughout the Class Area properties and residences.

36.     Plaintiffs and the Class Members reasonably believed that the groundwater, surface water, air, and soil in their neighborhood did not pose any greater health hazard than any other groundwater, air, soil, or natural resources in a typical unpolluted residential community.

37.     Plaintiffs' and the Class Members' properties have each been impacted by the contamination due to Defendant's acts and omissions in handling, operating, containing, and remediating the Site and its contamination.

38.     Plaintiffs and the Class Members seek redress and damages including, but not limited to, economic losses, such as loss of property value, and punitive and other damages as the result of the careless, reckless, negligent, willful and wanton actions in violation of law and disregard of persons who foreseeably might be harmed by such acts or omissions by the Defendant.

39.     Defendant's intentional, reckless, or otherwise negligent conduct created the condition causing the contamination and Defendant knew or should have known that harm to Plaintiffs and Class Members was substantially certain to follow.

40.     Defendant, despite knowledge of the serious health and environmental effects associated with the contaminants migrating throughout the Class Area and the surrounding environment, failed to warn the public in general, and the Plaintiffs and the Class Members in

8

particular, of the dangers that the historical use activities at the Site and the threat that the contamination from the Site posed.

41.    Despite its knowledge of the serious health and environmental effects associated with the Site contamination, Defendant did not adequately investigate and remediate the Site and therefore, failed to prevent contamination of and throughout the Class Area. Nor did Defendant publicize the scope and extent of contamination and its associated risks. These actions and omissions prevented Plaintiffs and Class Members from taking the appropriate response and enabled Defendant to avoid taking necessary and reasonable steps to address and respond and protect the properties within the Class Area in a timely manner.

42.    As a result, Plaintiffs and the Class Members suffered while Defendant gained by indefinitely delaying effective mitigation and remediation measure, which allowed the contaminants to migrate further into the surrounding community resulting in additional exposure and harm due to these dangerous chemicals.

**III.    The Plaintiffs' and Class Members' Concerns Regarding Contamination are Reasonable**

43.    A news outlet informed the general public about the cancer risks in the community due to the Plume, including potential exposure from well water and vapor intrusion.

44.    On February 20, 2024, a news outlet informed the public about the Forest Hills contamination. It reported that TCE had been contaminating the groundwater in the Forest Hills neighborhood since the 1990s and TCE "is a potential health hazard to the kidney and liver and has the potential to cause cancer." Local reports about a similar contamination incident in Northeast Wichita informed readers "that exposure to TCE can cause, among other things, kidney cancer, non-Hodgkin's lymphoma, and heart issues;" and notified residents that Kansas health officials recommend they seek cancer screenings.

9

45.     With the plethora of news outlets spreading warnings about the impacts of the TCE contamination in Wichita, the general public was made aware of the cancer risks in the community from the plume and potential exposure from well water and vapor intrusion.

46.     Furthermore, in October 2023, the U.S. Environmental Protection Agency (EPA) publicly announced a proposal to ban all uses of TCE because it is an extremely toxic chemical known to cause serious health risks including cancer, neurotoxicity, and reproductive toxicity. In December 2024, the final rule was adopted and TCE was essentially banned and to be phased out of all uses due to its unreasonable risk to human health.

47.     The general public and the Plaintiffs' and Class Members' concerns regarding the contamination are reasonable.

## IV.     Tolling of Statutes of Limitations and Repose

48.     Plaintiffs and the Class Members incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

49.     As of at least 2024, Defendant and Aptim were still conducting site investigations to determine a work plan to remediate the plume but wasted time and negligently failed to meaningfully remediate the plume while conducting endless studies and investigations.

50.     As a result, Defendant was negligent in not remediating in a meaningfully way prior to 2024 and has been dragging its feet for over 25 years while continuing to endanger the public after voluntarily agreeing to remediate.

51.     Defendant is estopped from relying on any statute of limitations because of its silence and concealment of the character, quality, scope, extent, and nature of the contamination at, in, under, and on properties forming the class area. Defendant was aware of the non-public nature of the circumstances of the contamination. This non-public information (over which Defendant had and continues to have control) was not provided to the residential homeowners and

10

purchasers, and persons living at properties within the Class Area, including the Plaintiffs and the Class Members. On information and belief, to this day Defendant has failed to provide the full set of facts and information to the Plaintiffs and Class Members.

52.     Plaintiffs and the Class Members had no knowledge that Defendant was engaged in the wrongdoing alleged herein. The contamination cannot be seen either in the ground water beneath their property, or in the vapors from the contaminants entering their homes. Because of the concealment by Defendant, the failure to notify the Plaintiffs, the Class Members, and the public of the contamination and its attendant risks, neither the Plaintiffs nor the Class Members have, nor could they have reasonably discovered, the contamination at any time prior to the commencement of this case.

53.     Defendant owed a legal and equitable duty to Plaintiffs and the Class Members to speak about and disclose the extent of the contamination and the threats it posed and failed to do so. Therefore, the Statute of Limitations is tolled.

54.     The running of any statute of limitations or statute of repose has either not begun to run or has been tolled by reason of Defendant's fraud by silence and/or fraudulent concealment. Defendant knew or should have known the extent and harm of the contamination and had a duty to disclose information to the Plaintiffs and Class Members. However, Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Class Members the pollution present on, at, and around their properties and Plaintiffs and Class Members, who only recently became aware of such contamination on, at, and around their properties and residences.

55.     The intentional failure to disclose such information was material to Plaintiffs and Class Members who in turn suffered losses because of their reliance on the belief that their water,

air, and soil was free of harmful contaminants or at least did not pose a threat to their health and welfare.

**V.    Defendant Knew or Should Have Known the Extent and Threat the Contamination Posed Yet Concealed Such Information and Engaging in Fraud by Silence**

56.    As a sophisticated corporation that regularly handles industrial chemicals and employs environmental, safety, engineering and myriad other professionals in technical and scientific fields, Defendant knew or should have known to a substantial certainty that contaminants they released into the environment and failed to properly remediate would enter the property of Plaintiffs and Class Members. Defendant knew or should have known that such migration of these contaminants would inevitably result and enter Plaintiffs' and Class Members' properties.

57.    In 1993, Defendant's Site was confirmed as being the source of contamination. In 1995, RAC voluntarily entered into a Consent Order with the state to investigate the contamination and potential remediation options, the Consent Order being binding upon RAC's "respective agents, successors, and assigns." Plaintiffs were third-party beneficiaries to this contract which was binding upon Textron Aviation when it acquired the Site.

58.    The 1995 Consent Order **required** subsequent owners or successors were provided a copy of the Consent Order before ownership rights were transferred.

59.    In 2014, when Defendant acquired the Site, Defendant knew or should have known there was a Plume originating from the site that extended over half a mile south and west of the Site impacting the Central Avenue, Forest Hills, and Corporate Hills neighborhoods. Yet, Defendant consistently failed to reveal the contamination to the community.

60.    Defendant knew or should have known of the risk of vapor intrusion in the Plume area due to high levels of TCE and other contaminants in the groundwater, which is as close as five feet below the surface in some locations.

61.     However, Defendant fraudulently remained silent and concealed such evidence from the public, notwithstanding that its Site has been releasing and continues to release these contaminants since the early 1990s or earlier.

62.     In 2014, in the work plan it submitted to the KDHE, Defendant concealed the harmful impacts of TCE vapor intrusion in the Class Area when it misstated that "no adverse health effects associated with indoor air exposures are expected" in the Plume area. Defendant reported that "[t]he estimated non-carcinogenic hazards and cancer risks associated with these exposures do not indicate any potential for adverse health effects" and the remediation strategy "will not result in unacceptable human health or ecological risks under current and anticipated future site conditions" and "indoor air concentrations indicate further actions to evaluate or mitigate indoor vapor intrusion at this time are not warranted."

63.     In a 2024 statement to a news outlet, Defendant again was silent regarding the impacts on the community when it claimed that "Textron Aviation has over time conducted several air quality monitoring projects in homes and commercial buildings in and near the Forest Hills neighborhood. Results of all such air quality testing consistently show no contaminants of concern at levels that would require mitigation." There is no record of Defendant testing homes from 2012 to 2021.

64.     In 2022 and 2023, Defendant conducted indoor air sampling in the Plume area and detected TCE in some of those homes. Yet, when Defendant detected TCE it concealed the dangers to the residents when it informed them that although the TCE was potentially originating from the contaminated groundwater, "no further actions to evaluate or mitigate vapor intrusion are warranted for your home at this time."

14

65.     A May 2023 email to a property owner from Greg Simpson, Senior Project Manager at Textron, claimed that the TCE "detected in indoor air during the February 2022 sampling event are not associated with the ongoing remediation work that Textron Aviation is completing under the oversight of the Kansas Department of Health & Environment (KDHE). The detected compounds, all of which were below the applicable KDHE residential indoor air standards, are typical of indoor air within all residences due to off gassing of various household products, building materials and normal everyday activities." Mr. Simpson's information contradicts the letters residents received regarding the indoor air monitoring asserting the TCE could have come from the groundwater.

66.     In 2024, air monitoring results revealed TCE was detected in approximately 80% of homes tested, some outside of the Plume indicating the Plume is not only impacting human health, but it is also larger than estimated. In fact, a home just west of the Plume registered TCE contamination over 100 times the health risk standard. Still, Defendant failed to publicly inform residents in the Plume of these results.

67.     Time and time again Defendant's misstatements concealed the true nature of the contamination, which prevented Plaintiffs from discovering facts that would give rise to a claim against Defendant.

## VI.    Defendant Had a Duty to Disclose Information to Plaintiffs

68.     First, Defendant had a statutory duty to speak and warn Plaintiffs about contamination.

69.     K.S.A. 65-6203 states that "it shall be the duty of any person responsible for an accidental release" that contaminates water or soil to "compensate the owner of the property" and

"comply with all rules and regulations . . . designed to ensure the prompt correction of any such release or discharge."

70.     Defendant could not comply with the statutory duties to compensate owners and promptly correct the release while remaining silent and concealing the contamination from Defendants, showing a statutory duty to speak.

71.     Second, Defendant had a duty to disclose the contamination based on the requirements in the Consent Order, including that:

    a.     the Respondent, owner of the facility, determine the scope of the work and develop a Corrective Action Plan in the "best interest of all parties and the public" in large part due to the fact that the Site constituted a "a hazard to persons, property or public health or threatens to become a hazard to persons, property or public health;"

    b.     the Respondent, upon determining a "potential" threat to public health and welfare exists, should clean up the hazardous chemicals to protect public health and safety;

    c.     the Respondent develop a Community Relations Plan; and

    d.     the Respondent determine the communities' acceptance of the plan under the Evaluation of the Corrective Action provision.

72.     The language in the Consent Order with KDHE created a duty to inform Plaintiffs and Class Members of the threats and harm to their community.

73.     Also, upon information and belief, Defendant neither developed nor implemented a Community Relations Plan nor did Defendant communicate to the public in order to receive "community acceptance" of its remediation plan.

74.     Additionally, because the Consent Order was intended to benefit impacted residents by protecting their public health and safety, Plaintiffs are third party beneficiaries to the Consent

Order. Defendant had a duty to inform Plaintiffs and Class Members of relevant information in the Consent Order.

75.    Defendant's actions of entering the government Consent Order and then remaining silent and concealing the contamination from Plaintiffs triggered tolling or inapplicability of any limitations period or repose due to Defendant's fraudulent concealment.

76.    Third, Defendant had a duty to the Plaintiffs—who were third-party beneficiaries of Defendant's contracts with environmental consultants—in exercising reasonable care in fulfilling the contract and a duty to communicate relevant information regarding the performance under the provisions of the contract.

77.    In or around 2014, Defendant hired and contracted with CB&I Environmental & Infrastructure, Inc. In or around 2017, Defendant hired and contracted with Aptim as the primary consultant on the project. Plaintiffs were third-party beneficiaries to these contracts because the performance under the contract impacted the plaintiffs.

78.    Fourth, under Kansas' law imposing a legal or equitable duty, Defendant had a fundamental duty under the principle that an actor who creates a hazardous condition has a duty to use reasonable care to warn others of the condition or correct it.

79.    Fifth, Defendant's Corporate Responsibility Report created a duty and obligation to warn the community, including Plaintiffs and Class Members, about the contamination and remediate the contamination it caused.

80.    Defendant's "Corporate Responsibility Report" states that "Sustainability through product design and improvements in our manufacturing processes is a win for the environment, our customers and our company."

81.     The Report also provides that Textron understands "our responsibility to contribute meaningfully toward ensuring a sustainable future for the planet" and its commitment to "responsible corporate citizenship and helping to improve the quality of life in communities where we live and work," which includes the objective to "invest in the quality of life in the communities where do we business."

82.     The Report outlines Environmental Health and Safety Operating Principles which include the following:

a.      "All injuries and environmental incidents are preventable,"

b.      "Environmental, Health and Safety is led by senior management, implemented by line management, with each level accountable to the one above and responsible for the one below."

c.      "Strong environmental, health and safety performance is good business."

83.     Defendant's EHS statement further provides that Textron will "eliminate adverse environmental impacts and contribute positively to the communities in which we operate."

84.     As a result of Defendant's actions, Plaintiffs and the Class Members could not reasonably know or have learned through reasonable diligence that Plaintiffs' and the Class Members' properties were contaminated with TCE and other chemicals and that those risks were the direct and proximate result of Defendant's acts and omissions.

85.     In short, Defendant failed to inform Plaintiffs and defrauded Plaintiffs out of their tort claims.

## CLASS ACTION ALLEGATIONS

86.     This class action is being filed by the Plaintiffs, pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and others similarly situated. The putative Class Members are similarly situated.

87.     Plaintiffs seek to certify the following class, defined as:

**The Class: Any and all persons that own any residential real property in Class Area depicted on the map in orange below and narratively defined thereafter (the "Class Area").**



**The Class Area can narratively be defined as all residential properties within the area defined as all residents on both sides of the road:**

**Beginning at the intersection of North Webb Road and Central Avenue, travelling west to North Linden Drive, travelling south to East Douglas Parkway, travelling east to North Webb Road, and travelling north to the intersection of North Webb Road and Central Avenue.**

88.     To the extent revealed by discovery and investigation, the Class Area boundaries may be extended and there may be additional appropriate classes and/or subclasses derived from the above class definition.

89.     Excluded from the class are the Defendant, any entity that has a controlling interest in the Defendant, their legal representatives, officers, directors, assigns, successors, employees, agents and members of their immediate families; governmental and the judicial officers to whom this case is assigned, their staff, (and the members of their immediate families).

90.     This Court may maintain these claims as a Class Action pursuant to K.S.A. 60-223(b)1, 60-223(b)(2), 60-223(b)(3), and/or 60-223(c)(4).

**Numerosity**

91.     K.S.A. 60-223(a)(1): The members of each class are so numerous that joinder of all members is impractical. There are nearly 200 parcels of real estate in the Class Area. The number of persons that own these properties located within the Class Area is estimated to be multiple thousands. The number of Class Members is such that it exceeds the number that reasonably allows for joinder of all Class Members and, therefore, the number of members of the Property Class satisfies K.S.A. 60-223(a)(1).

**Commonality**

92.     K.S.A. 60-223(a)(2): There are common questions of law and fact that affect the rights of every member of each respective class, and the types of relief sought are common to every member of each respective class. The same conduct by Defendant has injured or will injure all Class Members.

93.     The same conduct by Defendant has injured each respective Class Member. Common questions of law and/or fact that are common to the Class include, but are not limited to:

   a.   Whether Defendant was negligent in its acts or omissions that caused contaminants to be released from the Site and migrate into, under and throughout the Class Area;

   b.   Whether Defendant, through its acts or omissions at the site, proximately caused contaminants to be released and migrate into, at, on, or around the Class Area;

   c.   Whether Defendant failed to exercise reasonable care in its handling, storing, transporting, using, releasing, discharging, emitting, disposing and/or failed to reasonably investigate, contain, remediate and mitigate the contaminants;

   d.   Whether Defendant violated applicable standards concerning handling, storing, transporting, use, release, discharge, emission, disposal and/or failure to investigate and remediate the contaminants;

   e.   Whether Defendant's acts of releasing, discharging, spilling, emitting, allowing migrating or depositing contaminants onto Plaintiffs' properties,

and/or their failure to remove, contain, or mitigate such contamination from Plaintiffs' properties, constitutes a private nuisance;

f.   Whether the nature of the Defendant's actions and the resulting contamination constitutes a permanent and/or continuing nuisance;

g.   Whether Defendant's releasing, discharging, emitting or depositing site contaminants onto Plaintiffs' properties, and/or their failure to remove such contamination, constitutes a permanent trespass and/or continuing trespass;

h.   Whether Defendant proximately caused Site contaminants to be released into the environment, and Plaintiff's and Class Members' properties and persons have been exposed to such contaminants;

i.   Whether, as a result of the exposure to Site contaminants, Plaintiff's properties and the properties of the members of the Property Class have suffered a loss in value; and

j.   Whether Defendant remained silent and/or concealed the contamination from Plaintiffs and Class Members.

94.   These questions of law and/or fact are common to the Class and predominate over any questions affecting only individual Class Members.

## Typicality

95.   K.S.A. 60-223(a)(3): The claims of Plaintiffs are typical of the claims of the Class Members as required by K.S.A. 60-223(a)(3), in that all claims are based upon the same factual and legal theories. It is the same conduct of the Defendant that injured each Class Member. The principal issue in this case involves Defendant's conduct in the wrongful handling, storing, transporting, using, releasing, discharging, emitting, and disposing the Site contaminants, and Defendant's failing to quickly warn, contain, remediate and mitigate the site contaminants. Its operations at the site have impacted all members of the Class.

## Adequacy

96.   K.S.A. 60-223(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of the Class, as required by K.S.A. 60-223(a)(4). Plaintiffs have retained counsel with

substantial experience in the prosecution of class actions and environmental litigation. Plaintiffs and their counsel are committed to the vigorous prosecution of this action on behalf of the Class Members and have the financial resources to do so. Neither Plaintiffs nor counsel has any interest adverse to those of the Class Members.

### K.S.A. 60-223(b)(1)

97.    Class certification is appropriate pursuant to K.S.A. 60-223(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications that would establish incompatible standards of conduct for Defendant. Adjudications respecting individual Class Members would, as a practical matter, be dispositive of the interests of the other Class Members or would risk substantially impairing or impending their ability to prosecute their interests.

### K.S.A. 60-223(b)(2)

98.    Class certification is appropriate pursuant to K.S.A. 60-223 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to all Class Members, thereby making relief in the form of an injunction appropriate. Defendant should be required to address the nuisance and trespass through a prompt and thorough investigation, which includes continual monitoring of the air, groundwater, and soil at the properties of Plaintiffs and Class Members and contain, mitigate, and manage the Site contaminants to prevent further injury to the extent it is reasonably appropriate.

99.    Plaintiffs and Class Members have suffered, and will continue to suffer, harm and damages as a result of Defendant's unlawful and wrongful conduct.

### K.S.A. 60-223(b)(3)

100.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy under K.S.A. 60-223(b)(3). Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. Absent a class action, most Class Members likely would find the cost of litigating their claims prohibitive and will have no practical or effective remedy at law. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. It would be impracticable and undesirable for each member of the putative class who has suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all putative class members.

101.    Class certification is also appropriate because this Court can designate particular claims or issues for class-wide treatment and may designate one or more subclasses pursuant to K.S.A. 60-223(c)(4).

102.    No unusual difficulties are likely to be encountered in the management of this action as a class action.

103.    Plaintiffs and the Class Members were not in any way responsible for the site contaminants in the Forest Hills neighborhood of Wichita, Kansas.

**CAUSES OF ACTION**

**COUNT I – NEGLIGENCE**

104.    Plaintiffs repeat and re-allege each allegation in each numbered paragraph above.

105.    At all relevant times, Defendant owed Plaintiffs and Class Members, who foreseeably could be injured by its negligence, a duty to exercise reasonable care in using,

23

handling, storing, disposing, releasing, and discharging the Contaminants and carcinogenic materials, that it knew, or should have known, could damage Plaintiffs, Class Members, their property, and their residences.

106.    Defendant also owed a duty of care to Plaintiffs and Class Members to exercise reasonable care to investigate and remediate the site Contaminants particularly in proximity to Plaintiffs' and Class Members' residential property.

107.    By creating a dangerous condition, Defendant further owed a duty to exercise reasonable care to disclose to Plaintiffs the presence of the Contaminants and the risks they posed.

108.    Defendant further owed a duty to exercise reasonable care to contain, mitigate and manage the Site contaminants to avoid further injury to Plaintiffs and Class Members.

109.    These duties to exercise reasonable care arose out of the common law as well as relevant environmental statutes and regulations and Defendant's own policies.

110.    Defendant breached its duty, over a period of years, in at least the following respects:

    a.    Improperly releasing contaminants into the groundwater.

    b.    Failing, and continuing to fail, to prevent groundwater contamination and its migration off site.

    c.    Despite knowledge of the widespread presence of contamination, and along with the knowledge of the health and environmental risks that these materials posed for those living in the Class Area, failing, and continuing to fail to take appropriate actions on and around the site (including acts into, onto, and under the land that forms the Class Area) and into private homes within the Class Area.

d.   Failing, and continuing to fail to safely, properly, and timely contain, remove, remediate, and dispose of the hazardous and toxic contamination, including carcinogenic materials.

e.   Failing, and continuing to fail to warn and disclose to Plaintiffs and Class Members of the contamination on, in, and around their properties, and the risks that this contamination posed to them and to their families, and the likelihood that they were being exposed to carcinogenic chemicals.

f.   Failing, and continuing to fail, to adequately and with due care investigate and identify the extent of contamination from the site, promptly notify property owners of impacts and health threats posed by those chemicals, and remediate these chemicals to reduce or remove the threat to Plaintiffs' and Class Members' properties.

g.   Spending nearly 10 years "studying" the problem and failing to adequately test every home above the plume as part of negligent remediation and mitigation.

h.   Being otherwise negligent.

111.   As a result of Defendant's negligent acts and omissions, extensive contamination has existed, exists, and will continue to exist without affirmative remedial actions in and around the Class Area.

112.   As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiffs' and Class Members' properties have been permanently contaminated, their property values have diminished, and their properties are unfit for unfettered residential use.

25

113.    As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiffs and the Class Members currently suffer actual property damage, stigma, diminution in property value, and degradation to their community.

## COUNT II – PRIVATE CONTINUING NUISANCE

114.    Plaintiffs repeat and re-allege each allegation in each numbered paragraph above.

115.    Defendant's past, present and/or continuing acts and/or omissions constitute an intentional nuisance in that Defendant leaked, leached, or discharged contaminants from the Site and created or caused contamination with knowledge that the harm to the Plaintiffs and the Class Members was substantially certain to follow in the form of offense and endangerment to their lives and health, injury to their property, and diminution of property values.

116.    Defendant continues to discharge contaminants from the Site and continues to create or cause contamination that is harming Plaintiffs and the Class Members.

117.    Defendant's past, present and/or continuing activities, acts and/or omissions at the site and in the property surrounding the Site constitute a private continuing nuisance resulting in hazardous and toxic substances contaminating Plaintiffs' and Class Members' properties, thereby exposing Plaintiffs and the Class Members to substantial and unreasonable harms and requiring remediation, abatement, and mitigation as well as causing diminution of property values.

118.    Defendant's actions constitute a nuisance in that Defendant has unreasonably interfered with Plaintiffs' and the Class Members' property interests, health and safety.

119.    The nuisance that Defendant created is a continuing nuisance that is reasonably abatable and remains unabated.

120.    Defendant has a legal right, and is under a legal duty, to terminate the cause of the injury and has not done so.

121.    Plaintiffs' nuisance claim is continuing because the Contaminants and other toxins are still being discharged from the Site, resulting in continued contamination on Plaintiffs' properties and the nuisance will continue until the Contaminants are removed.

122.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiffs and the Class Members have suffered, currently suffer, and will suffer exposure to hazardous substances and economic loss as a result, including the cost of remediation, abatement and mitigation and other harms for which damages are justified.

### COUNT III – CONTINUING TRESPASS

123.    Plaintiffs repeat and re-allege each allegation in each numbered paragraph above.

124.    Defendant intentionally used, disposed of, and stored chemicals that directly caused, and continue to cause, the migration of contamination at, under, onto, and into Plaintiffs' and Class Members' properties and homes. Such intrusion constitutes a continuing trespass.

125.    Plaintiffs' trespass claim is continuing because Defendant's Contaminants are still flowing from its property, other toxins are still on Plaintiffs' property and the trespass continues until the Contaminants are removed.

126.    Defendant has a legal right, and is under a legal duty, to terminate the cause of the injury and has not done so.

127.    Defendant knew or should have known that it was a substantial certainty that contaminants released into the environment and not properly remediated would enter the property of Plaintiffs and Class Members and that such migration of these contaminants would inevitably result and enter their properties.

128.    These chemicals on their land constitute an uninvited, unwanted, and unlawful invasion of Plaintiffs' and Class Members' properties and homes causing continuing injury to the Plaintiffs' and Class Members' properties.

27

129.    Defendant's trespass has proximately caused, and continues to cause, Plaintiffs and the Class Members to suffer economic and non-economic damages, stigma, and the cost of remediation, abatement, and mitigation as well as causing property value diminution.

130.    Plaintiffs' and the Class Members' right to be free of trespass has been and continues to be denied by Defendant.

**COUNT IV – VIOLATION OF KANSAS DISCHARGE STATUTE K.S.A. 65-6203**

131.    Plaintiffs repeat and re-allege each allegation in each numbered paragraph above.

132.    Defendant released and discharged contaminants that were detrimental to the quality of the water and soil in, on, and around Plaintiffs' and Class Members' properties in violation of K.S.A. 65-6203.

133.    Plaintiffs and Class Members did not cause or contribute to the contamination.

134.    Because of Defendant's release and discharge of the contaminants, Plaintiffs and Class Member have suffered actual damages.

135.    Defendant's contamination is of a nature and duration that pollutes the State of Kansas' soil and groundwater, exceeds health-based regulatory standards, has resulted in governmental warnings to avoid groundwater usage and avoid other exposure to such contaminants, presently impacts and injures Plaintiffs' and the Class Members' property, causes a diminution in their property values, and is a blight on Plaintiffs' and the Class Members' community. Such harms include, but are not limited to, contamination to Plaintiffs' and Class Members' air, water, and soil, and the stigma and diminution of property value.

136.    Defendant violated K.S.A. 65-6203 when it failed to comply with rules and regulations designed to ensure the prompt correction of the release and discharge of contaminants, thereby endangering public health and the environment.

137.    Pursuant to K.S.A. 65-6203, Defendant is strictly liable for these discharges and must compensate Plaintiffs and Class Members for all damages and for the cost of corrective action accessible to them.

138.    Defendant's actions were wanton in violating Plaintiffs' rights, entitling Plaintiffs to punitive damages under K.S.A. 65-6203.

## JURY TRIAL DEMAND AND PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs hereby demand a trial by jury of all issues so triable. Plaintiffs further request that the Court enter an order or judgment against Defendant as follows:

A.    Enter an Order pursuant to K.S.A. 60-223 permitting this action to be maintained as a class action, appointing Plaintiffs as the representatives of the Class Members and Plaintiffs' counsel as counsel for the Class;

B.    Enter judgment in favor of Plaintiffs and Class Members against Defendant for the loss of permanent and temporary or continuing property value, mitigation, remediation, stigma, unjust enrichment, the cost of prompt corrective action, and for all other relief, in an amount to be proven at trial, as to which they may be entitled, including interest, costs of notice to class members, fees and costs of this suit;

C.    Award prejudgment and post-judgment interest as provided by law;

D.    Award punitive damages;

E.    Award reasonable and necessary attorneys' fees and costs; and

F.    Award such other relief as this Court deems necessary, just and proper.

Dated:  April 14, 2025

(Approvals on Next Pages)

Respectfully Submitted:

**YOUNG, BOGLE, WELLS & BLANCHARD, P.A.**

/s/ Jerry D. Bogle
Jerry D. Bogle, SC Bar# 06512
100 N. Main, Suite 1001
Wichita, KS 67202
Phone: (316) 265-7841
Fax: (316) 265-3956
Email: jerry.bogle@youngboglelaw.com


**NIDEL & NACE, P.L.L.C.**

/s/ Christopher T. Nidel
Christopher T. Nidel DC Bar No.: 497059
chris@nidellaw.com

/s/ Jonathan Nace
Jonathan Nace, Esq. DC Bar No.: 985718
jon@nidellaw.com  (*pro hac vice forthcoming*)

/s/ William W. Cowles
William W. Cowles NY Bar No. 5120928
NY Bar No.: 5120928
will@nidellaw.com
One Church Street
Suite 802
Rockville, MD 20850
Tel: 202-780-5153

KRESCH LEGAL SERVICES PR, PLLC

/s/ Ari Kresch
Ari Kresch
Michigan Bar No. P29593
akresch@1800lawfirm.com
1225 Avenida Ponce de Leon, Suite 605
San Juan, Puerto Rico 00907
Tel:  (800) 529-3476

*Attorneys for the Plaintiffs and the
Putative Class Members*
*Email:*  akresch@1800lawfirm.com

31